## S. P. BOWMAN, ET AL., v. CLINTON COCKRILL.

1. SHERIFF'S DEED—*Cannot be impeached collaterally.* Proceedings before a court having jurisdiction of the subject-matter, and of the person, and a sheriff's deed executed on a sale made under such proceedings, cannot be impeached collaterally. (Affirming *Paine v. Spratley,* 5 Kas., 525.)

2. TAX DEED—*Not vitiated by slight Irregularities.* A Tax Deed is not void upon its face by reason of slight irregularities. The statute does not require that a tax deed shall be in the exact form prescribed by the statute, but only substantially in that form.

3. —— *Prima facie Evidence of Title.* A tax deed, not void upon its face, is of itself *prima facie* evidence of everything necessary to its own validity, and is *prima facie* evidence of title in the grantee mentioned in the tax deed.

4. ——*When Admissible in Evidence.* It is not necessary to prove the election or qualification of the assessor, or to prove any other fact connected with the assessment, levy, or sale, before the tax deed can be introduced in evidence.

5. TAX DEED *may be issued to Person in Possession of land.* A Tax Deed is not void, though made to a person who was in possession of the property when it was assessed, and taxed, and sold for taxes, and when the deed was executed, provided such person was under no legal or moral obligation to pay the taxes on said property.

6. STATUTE OF LIMITATIONS—*Tax Titles.* After a tax deed has been recorded two years, an action for the recovery of the property therein mentioned is barred by the statute of limitations.

7. STATUTES—*Title of—Constitutional Law.* A statute of limitations, enacted for the purpose of aiding and assisting in the collection of taxes, and for the purpose of enforcing their payment, may be inserted in an act entitled "An act to provide for the assessment and collection of taxes," without contravening the provisions of section 16, article 2 of the constitution, which provides that "no bill shall contain more than one subject, which shall be clearly expressed in its title."

*Error from Leavenworth District Court.*

EJECTMENT, brought by defendant *Cockrill,* plaintiff below, against *S. P. Bowman, Martin Nieman,* and *Elizabeth Nieman,* plaintiffs in error, for the recovery of Lots No. 9 and 10, in Block No. 28, in Clark & Rees' Addition to the city of Leavenworth. The action was commenced June 2, 1869. There was no controversy in this court about Lot No. 9, the disputed title relating to Lot No. 10 alone. *Cockrill* claims title to said Lot No. 10 under a Sheriff's deed, and the plaintiffs in error claim title to said lot under a tax deed.

The facts respecting *Cockrill's* title are fully set forth in the "findings of the court," in *Paine v. Spratley*, 5 Kas., pp. 527 to 531, where it appears, that Cockrill recovered a judgment April 4, 1862 against Samuel F. Few, Amos Rees, and Jeremiah Clark, for $7,628.33; that execution was issued on said judgment, and levy made on certain lands which had been patented to said Clark; that said lands were duly sold on said execution by the Sheriff of Leavenworth county, who executed to said Cockrill, as purchaser, a deed of the lands sold. Said sheriff's deed covered Lot No. 10, in controversy in this action. *Cockrill*, to support his claim to said Lot No. 10, made due proof of said facts, and then rested.

In support of their title, the plaintiffs in error offered in evidence a tax deed executed by the clerk of Leavenworth county to John Geo. Brown, for the taxes of 1862. Said deed was dated June 21, 1865, was duly witnessed, acknowledged, and recorded in the registry of deeds June 24, 1865. It is in regular form except in three respects: 1st, it uses the word "named," where it should use the word "made," in the following clause, to-wit—"in substantial conformity with all the requirements of the statute in such case *made* and provided:" 2d, the *blank* following the words—"for and in consideration of the sum of————," was filled up, but not with the proper amount: and 3d, it uses the words—"subject however, to all the rights of redemption as provided by law," instead of using the words, "subject however, to all rights of redemption provided in the act to which this is amendatory." *Cockrill* objected to the introduction of this tax deed, and the objection was sustained, and the deed rejected; to which plaintiffs in error excepted.

It was shown by plaintiffs in error that said *Elizabeth*

Nieman was formerly the wife of one John Geo. Brown; that said Brown died on the 12th of October 1866; that at the time of his death he resided on·said Lot No. 10; that said lot had been in the possession of. said *Elizabeth* ever since his death.

The tax roll of Leavenworth county for 1862, in relation to said Lot No. 10 was offered and received in evidence. Other preliminary proofs were then offered by the plaintiffs in error, and were rejected; after which, the said tax deed was again offered in evidence, and again rejected by the court.

The court directed the jury to find a verdict for plaintiff *Cockrill*, which was done. The defendants below moved for a new trial, which was overruled, and judgment entered on the verdict for the recovery of both lots. This proceeding is brought to reverse that judgment.

*James S. Jelley* and *James McCahon*, for plaintiffs in error:

1. A proceeding to divest title by a sheriff's sale is a special statutory authority, and all the requirements of the statute must be strictly complied with. 4 Cranch, 403; 11 N. Y., 61; 2 Kas. 115. And the return of the sheriff must show such facts. 13 Mass., 483.

A purchaser at sheriff's sale purchases with notice of all defects in the proceedings: 3 How., 713, 715; 12 Barb., 240. Especially when the judgment creditor is the purchaser. 2 Blackf., 1; 2 Caines, 61.

The confirmation of the sale does not cure the defect. It cannot make that valid which is void. The proceedings of the officer do not become *res adjudicata* by the confirmation. 2 Wall., 609; 3 Kas., 276, 390.

2. The court erred in excluding the tax deed. The

law under which a tax deed is executed, determines its effect; and such effect is not changed by a subsequent repeal of the law. Black. Tax T., 351; 11 Paige, 484; 11 Wis., 353; 13 id., 347; 17 id., 556; 18 id., 59; 21 id., 350.

3. The statute of limitations had run in favor of the tax deed. Said tax deed (to Brown) was recorded June 24, 1865; this action was commenced June 2, 1869—more than two years after the recording of said deed; and Brown, and those claiming under him, have been in possession of the lot ever since the recording of the deed. Comp. L. 1862, ch. 198, § 11; Laws of 1866, ch. 118, § 90.

The act of 1860, (ch. 197, C. L., 1862,) as amended by the act of 1862, (ch. 198,) which was in force when the tax deed was recorded, was repealed by ch. 118 of 1866, which took effect on the 20th of March, 1866. The act of 1866 contained the same provision, in relation to the limitation of actions for the recovery of lands sold for taxes, as the act of 1860, as amended, and clearly indicated the intention of the Legislature to continue the same limitation in force. It was a continuation, not a repeal, of the law. *Lisbon v. Clark. 18 N. H.*, 234.

4. The act of 1866 continued in force until more than two years from the date of the recording of the tax deed. After the taking effect of the act of 1866, a reasonable time remained within which an action might be brought for the recovery of the land before the limitation prescribed by that act expired. Under these circumstances, even if the act of 1866 abrogated the limitation in the act of 1862, the limitation prescribed by the act of 1866 applied to this case, and barred the right of the plaintiff to recover the said lot. Story Confl. of Laws, §§ 55, 576, 580; 7 How., 776; 12 Metc., 268; 32 Barb., 428;

13 Mich., 318; 1 Kas., 126; 12 Minn., 572; 13 Peters, 45, 312; 10 N. H., 386; 15 Wis., 55; 1 Ind., 56; 4 Foster, 344; 21 Pick., 109.

5. Statutes of limitation are statutes of repose, and are to be liberally construed. They are of little use if they protect those only who can otherwise show an indefeasible title to the land.

In order to entitle the defendants to set up the bar of the statute after two years from the date of the recording of the tax deed, they had only to show that they held under a deed for lands sold for taxes. They were not bound to show that the requirements of the statute had been complied with. To require such proof before a party can have the benefit of the law, is to require him to show that he has *no need* of the protection of the statute before he can be *entitled* to it. Such a construction would annul the statute altogether. *Pillow v. Roberts*, 13 How. U. S., 472, 477, 478; *Leffengwell v. Warren*, 2 Black, 599.

6. In ejectment, under the code, it is not necessary to plead the statute of limitations. Gen. St., 1868, p. 748, § 590; 11 Ohio St., 442; 19 Ark., 650; 13 How., 472.

*Clough & Wheat* for defendant in error:

1. Some of the objections to the evidence offered by Cockrill, in relation to the appraisement, execution, etc., have been settled in *Paine v. Spratley*, 5 Kas. 525. The sheriff's deed is *prima facie* evidence of the legality of the sale; and by the sheriff's deed, the title to said lot 10 passed from Clark to Cockrill.

2. The plaintiffs in error offered to read in evidence a tax deed, dated on the 21st of June, 1865, in which it is, among other things, in substance recited, that lot 10 was

subject to taxation for 1862; that the taxes for that year remained unpaid; that the Treasurer of Leavenworth county sold said lot 10 for $5.32 taxes, interest and costs to Geo. P. Elbert, and that Elbert assigned his certificate of sale to John Geo. Brown.

If said deed was not *prima facie* evidence of title in Brown, or his heirs, then of course the court did not err in rejecting it, as it was not shown that the *prerequisites* of the law had been complied with, etc. 39 Illinois, 484; 10 Iowa, 92; 5 Ohio, 369. And we claim said tax deed was not *prima facie* evidence of such *title*, and was not even whilst chapters 197 and 198, Comp. L. 1862, were unrepealed and in full force.

It was intended by the legislature that the assessor was, in making his valuations, to have the use of certain papers and legal documents, before he commenced valuing property, and which were to be delivered to him as required by § 20, ch. 197, Comp. Laws 1862. Among other information to be thus derived by the assessor, beneficial for owners, is the material matter of the name of the owner. Nothing of this kind was done. 42 Mo., 162; 20 Wis., 228.

3. Sections 121, 125, ch. 52, Comp. Laws, provide for the election and qualification of assessors. That such election and qualification were necessary to make the assessment valid, see the following cases, where sales were held void, collaterally, for similar defects: 30 Me., 319, 325; 9 N. H., 491; 13 Serg. & Rawle, 208; 2 Vermont, 318; 18 Howard, 137, 142; 29 Cal., 449; Blackw. on Tax Titles, 97 to 104; 15 Iowa, 554.

4. As the legislature made the tax deed only *prima facie* evidence of the regularity of the proceedings, from the valuation of the land by the assessor inclusive, up to the

execution of the deed, we claim that neither it, nor any other of the evidence offered, was *prima facie* evidence of a compliance with the prerequisites of the law—that is, the elecction and qualification of the assessor, and the matters mentioned in § 20, ch. 197 aforesaid, as those matters were to be performed before the valuation commenced. Blackw., 83 to 90; 1 Doug., 121; 4 Blackf., 70, 494; 2 Denio, 329, 330; 50 Barb., 639.

5. But whether so or not, said ch. 197, and all amendments thereto, were repealed by ch. 118 of the laws of 1866, which took effect March 20th, 1866, without any saving of rules of evidence provided for in the former laws; therefore the rule of evidence made by said former laws is no longer in force, and as a consequence the tax deed aforesaid is not now *prima facie* evidence of anything. 4 Kas., 500; 18 Ind., 305; 6 Iowa, 5; 11 Texas, 311; 8 Michigan, 128: 38 Barbour, 608, 615; 14 Ill., 336; 19 Johns., 82.

6. Said tax deed is not in the form required by section ten, ch. 198, Comp. Laws, 878. The last nine words, before the testatum clause, in the prescribed form are, "*provided in the act to which this is amendatory,*" and in lieu thereof the words " as provided by law," are to be found in said tax deed. It was not the *legal effect* of the deed, but the *form thereof*, that was prescribed by the statute. And the word *named* is used, where the word *made* is found in the form. And, omitting the amount of subsequent taxes paid by the purchaser, $3.86, the sum of $5.32 is placed where the sum of $9.18 should have been placed.

- Because of these defects and variances from the form prescribed, said tax deed was not even *prima facie* evidence of anything whatsoever, but on the contrary said

deed is therefore void. 2 West. Jur., 168; 15 Wis., 446; 18 id., 59, 321; 6 Conn., 373; 36 Cal., 73; 5 Sneed, 316; 1 East, 64; 20 Wis., 450; 22 id., 430; 20 Wend., 249; 5 Gilman, 96; 1 Scam., 323; 28 Texas, 288, 293.

7. Said tax sale of said lot 10 is also *void* because the *name* of the then owner thereof was not given in the tax roll as required by §§ 22, 30, 31, 45, ch. 197, Comp. L., 1862. 42 Mo., 162; 1 Mun., 419; 1 Bibb, 295; 1 Foster, 400; 40 N. Y., 372; 34 Me., 89; 3 Mass., 419; 6 N. H., 182, 194.

And as there was no such certificate shown as is required by said § 31, to the book from which entries were read by plaintiffs in error, said book was not competent evidence. Black. on Tax T., 342; 31 California, 132.

And if said tax sale of said lot 10 was, by any of the evidence, shown to be void, plaintiffs in error are not entitled to a reversal of the judgment, because of anything occurring at the trial in relation to the tax deed. 26 Ind., 76; 7 Wend., 162; 18 Ill., 454; 21 id., 160; Hilliard on New Tr., 32, 45, 49; 3 Gra. & Wat. on New Tr., 751 to 761; 5 Mass., 104; 16 Ala., 581.

8. Said tax deed was recorded in June, 1865, and as the law which required an action to be brought within two years after a tax deed (made under that law) had been recorded, was, with the whole of said law, and all the amendments thereto, repealed by the tax law of 1866, and before such two years had elapsed, the action was not barred at the date of such repeal; and the two years mentioned in § 90, ch. 118, Laws of 1866, do not have application to this deed, nor to the record thereof, which were made before it took effect, as said section is not retrospective. 2 Kas., 155; 4 id., 327, 489; 11 Texas, 311; 21 Wis., 179, 262; 41 Illinois, 228; 3 Denio, 594;

52 Penn. St., 315; 3 Iowa, 114; 4 Gilman, 221, Ang. on Lim., 17, et seq.; 10 Sm. & Marsh., 599; 5 Pick., 20; 23 Miss., 269; 15 B. Monroe, 20; 5 English, 152; 8 Mass., 423; 12 Wendell, 137.

And § 113, ch. 118, Laws 1866, clearly shows that the legislature did not intend any of the provisions of said ch. 118 should have application to anything done under chapters 197 and 198, Comp. Laws. (Of course, the *prima facie* rule of evidence, created by § 56 of said ch. 197, was not by this section 113 continued in force. 4 Kas., 489.) The tax law of 1866 is complete and perfect in itself, each part thereof being evidently intended to have application to matters occurring under that law alone, (except, of course, said § 113.)

Said tax law of 1866 was itself repealed by the tax law of 1868, within two years after the law of 1866 took effect, so that even if § 90 of the latter act had application to the record of said tax deed, it was repealed before any vested right had been acquired under said § 90, said § 90 not being retrospective. 17 Wis., 573.

9. Section 144, and also §§ 116, 117, 118, of chap. 107 of Gen. Stat., entitled " An act to provide for the assessment and collection of taxes," approved February 27th, 1868, as well as § 90, in the tax law of 1866, and § 57 of ch. 197, and § 11 of ch. 198 Comp. Laws, are all, in so far as they attempt to limit or prescribe a period of time, or limitation, within which an action should be brought for the recovery of land, void, because in conflict with section 16, of article 2, of the Constitution of this State, which prescribes that " No bill shall contain more than one subject, which shall be clearly expressed in its title." There is nothing expressed in the title of either of the above mentioned laws which in the most remote

degree would indicate that a *limitation law* would be found in said acts; and in so far as those laws attempt to prescribe a period of time with which an action shall be brought for the recovery of land, they are respectively void. 11 Ind., 199; 16 Mich., 269, 277; 40 Ala., 77, 94, 98, et seq.; 53 Barb., 70; 4 Metc., (Ky.,) 293.

10. Sections 116, 117, 118, 144 of the tax law of 1868, are void in so far as they have application to the tax deed in question, or the record thereof, or the sale therein mentioned, because if they can have force *retroactively* on said sale, deed, or record, then by mere legislative enactment, property is taken from one individual and given to another for his individual use; and rights and liabilities are created, established and determined, without any act, consent or previous reason or cause in the law therefor, at the mere caprice of the legislature.

The inhibitions of the constitution as to legislation are to be regarded as well when they arise by implication, as by expression; and the expression of one thing in the constitution is the exclusion of things not expressed. 58 Penn St., 338.

A statute barring an existing cause of action presently, is void. 2 Kas., 135, 155; 1 McLean, 158; 5 Pick., 20; 3 Peters, 290; Cooley's Cons. Lim., 366, note 3; Sedg. Stat. and Cons. Law, 682–3: 17 Wis., 573; 13 Mich., 318; 2 Greenl., 294; 7 Ind., 96, 468; 5 Wallace, 300.

It is not within the power of the legislature to create a cause of action out of an existing transaction, for which there was at the time of its occurrence, no liability. 5 Minn., 101; 30 Ala., 127; 24 Me., 520, 530; 37 Ill., 82; 2 McLean, 195; 16 Mass., 86, 215; 45 id , 178.

A statute which made tax deeds conclusive evidence, held void. 23 Ind., 46; 42 Mo., 167; Black., 82, note.

Sections 18 and 20, of the bill of rights are applicable, and said sections of the tax law are in conflict therewith as to transactions two years old when same took effect. 3 Ohio St., 470; 13 N. Y., 392, 433; 40 Ill., 178; 34 Ala., 236; 3 Nevada, 341; 3 Bland's Ch., 95; 18 How., 280; 10 Yerger, 59; 5 Barb., 482.

And a statute is void when it attempts to transfer the property of one person to another without compensation —it *cannot* be done by legislative enactment even *with compensation.* 40 Ills., 175; 27 Mo., 373; 3 N. Y., 511; 5 Paige, 159; 28 Texas, 471; 8 Ohio St., 346; 6 How., 545; 24 Me., 520, 530; 38 Ala., 513; 13 Ark., 198; 18 Wendell, 56.

Void proceedings cannot be thus either wholly or partially cured. 52 Maine, 265; 14 Ill., 223; 15 id., 218; 45 id., 178; 3 Ohio St., 470; Sedg. on Stat. and Cons. Law, 689, 690, note.

Nor can a party be deprived of a vested right by legislative enactment. 30 Ala., 126; 9 Gill, 299; 7 Texas, 364; 2 G. Greene, 26; 7 Johnson, 477; 3 Pike, 285; 10 Iredell, 496; 17 Wis., 573.

When, from any cause, it is too late to appeal, and change the effect of proceedings of a court before then had, statutes giving a right in relation thereto, held void. 19 Ill., 228; 10 N. Y., 374; 39 id., 171; 2 D. Chip., 77; 41 Ala., 153; 18 Penn. St., 112; 21 Wis., 491; 2 Allen, 361; 10 Sm. & Marsh., 599.

The same principle is shown by those cases which establish the proposition, that where one has held property until the statute of limitations has run in his favor, a repeal of such statute does not revive the cause of

action for the property. 6 Wis., 527; 11 id., 371, 432; 13 id., 245; 8 Blackf., 506; 3 Littell, 137; Ang. on Lim., 19, note; 2 Ind., 647; 5 Metc., (Mass.) 400.

11. In so far as the Legislature, by passing § 144, ch. 107, Gen. Stat., attempted to revive the limitation portion of the tax law of 1860 and its amendments, its action is *void*, because a repealed law could not be thus revived. To have revived it, the act or sections referred to should have been contained in the reviving act: § 16, Art. 2, Const. of Kas.; 3 Kas., 503; 41 Ala., 9.

Nor can it be considered as having force, as a revival of the laws therein referred to, or otherwise, before it took effect: § 19, of Article 2, Const.; 1 Iowa, 442; 13 Mich., 325; 1 McLean, 158.

12. The Legislature of 1868 seems to have supposed that there were valid objections to said §§ 57 and 90, and therefore enacted § 118 of the tax law of 1868, which, we submit, is itself void for want of power in the Legislature to compel a party to sue another because he makes a *claim* to property. And as the two-year limitation in the before mentioned §§ 57, 90 and 116 is based on the *recording* of the *deed*, and not on *possession of the property*, or any other matter, we submit that in effect the two-year clauses in those sections are but matters of *confiscation*, and not *limitation*, and are therefore void. 5 Minn., 101; 11 id., 496; 18 Grat., 100; 18 Ill., 502; 38 Miss., 424.

That sub-division 3 of § 16, of the Code of 1868, cannot have force to bar an action on a tax deed recorded two years before said code took effect, see the cases cited in division 10 hereof. And as to such a deed, said sub-division will not be operative except in cases where suits may be commenced after the 31st October, 1870. 17 Wis., 573.

If said sub-division barred a cause of action existing at the time it took effect, or if any of the sections above mentioned can have force to transfer the property of Cockrill to defendants so soon as the same took effect, then, by the mere will of the legislature Cockrill will be deprived of all the substance of §5 of the Bill of Rights in the Constitution, which, we submit, cannot be be thus done. 39 N. Y., 171.

13. The evidence shows that one of the defendants below, Elizabeth Neiman, was the widow of the grantee in said tax deed; and it appears by her testimony, that said grantee was in possession of said lot 10 from some time in 1861, until his death in October, 1866. Such possession being one that would have ripened into a title under the statutes of limitations in twenty-one years, under the Code of 1859, (15 years under the Code of 1868,) or being acquired in privity with Clark first, and Cockrill afterwards, we claim he could not have acquired any tax title to the lot, and that his taking an assignment of the certificate of tax sale, operated as *a redemption.* 36 Cal., 146; 30 Ill., 119; 19 Wis., 424; 2 Watts, 495; 51 Penn. Stat., 377; 10 Ohio, 152; 4 Michigan, 140, 150, 579, 587.

The opinion of the court was delivered by

VALENTINE, J.: This case has been ably argued by counsel on both sides. Probably no point has been overlooked, but every point which skill, ingenuity, perseverance and industry could discover has been hunted up and presented to us for our consideration.

I. We have already decided, in the case of *Paine v.*

*Spratley*, 5 Kas., 525, that the sheriff's deed under which

1. SHERIFF'S DEED; not to be impeached collaterally.

defendant Cockrill claims, was valid, and sufficient to pass title. In that case, and with respect to the same judgment, writs of execution, and sheriff's' deed under and by virtue of which the plaintiff herein claims title to the lot in controversy, this court held, that where proceedings had been had in any case before a court of general jurisdiction, and on the face of such proceedings it appears that jurisdiction had been acquired of the subject-matter, and of the person, the decision and judgment of such court, notwithstanding errors may have intervened, cannot be collaterally attacked or examined, on account of such errors, in another court, or in another proceeding; but such decision and judgment must be regarded as binding until reversed. We still adhere to that opinion.

II.  The only question for us now to determine is, whether the tax deed under which the plaintiffs in error claim title is valid or not. ' The court below refused to receive the tax deed in evidence. Said tax deed was

2. TAX DEED— form of—irregularities not fatal;

executed by the county clerk of Leavenworth county to John Geo. Brown for the taxes of 1862; it is dated June 21st, 1865; was duly witnessed and acknowledged; it was recorded in the office of register of deeds June 24th, 1865; and it is regular in form in every respect, except that there are three slight discrepancies between its language and that of the statute. By reason of these slight discrepancies in form, the plaintiff below claims that the tax deed is void upon its face. We think not. The statute nowhere requires that the tax deed shall be in the exact language of the statute. All that is required is, that it shall be in substantial conformity to the form given in the statute; (§ 10,

Comp. Laws, 1862, p. 878;) and the statute further provides that "no mere irregularities of any kind shall invalidate the title conveyed by the tax deed;" (§ 10, p. 879.) It will probably seldom be found that the tax deed ought to be in the exact language of the statute. In fact it would seem ridiculous to use the exact words of the statute, in the third place where this deed differs from the statute, instead of using words which so much better express the meaning of the statute, as this deed does. A tax deed in the exact language of the statute would undoubtedly be good; but one in a better form, where the change is only slight, and the words mean the same thing, is equally good. Decisions from other States where the legislature have required that tax deeds shall be in the exact form prescribed by the statute, can have no application in this State where no such requirement is made.

As to the second supposed irregularity in said tax deed, this court is of the opinion that said blank was not filled up with the proper amount, but that it should have been filled up with a much larger amount, an amount equal to and including all the taxes, costs and interest due on said lot at the time said deed was made, and paid by the holder or holders of the tax-sale certificate upon which said tax deed was made. But still we think it is immaterial whether that blank was filled with the right amount or with a less amount, as a less amount can do no one any possible injury, unless it is the grantee of the tax deed himself. It can certainly do no injury to the original owner of the lot. We think the tax deed is valid upon its face.

III. As a second objection to the introduction of said tax deed in evidence, it is claimed by the plaintiff below

3. ——Tax deed is *that the defendant should have first shown by*
prima facie evi-
dence of regu- *evidence* aliunde *that everything prior to the*
larity of pro-
ceedings; *assessment of the lot was properly done; or*
in other words, he claims that the tax deed itself is not
*prima facie* evidence of the regularity of the proceedings
prior to the assessment of the property.

This is certainly not the true construction of our stat-
utes, nor the construction that has heretofore been
adopted. All our statutes upon the subject from Febru-
ary 12th, 1858, down to the present time have provided
substantially that the tax deed " shall be *prima facie*
evidence of the regularity of all the proceedings, from
the valuation of the land by the assessor *inclusive*, up to
the execution of the deed." The tax deed under the stat-
ute is *prima facie* evidence that the property was *regularly*
assessed, and that it was assessed by the *assessor ;* and if
it was regularly assessed by the assessor all the prerequi-
sites must of necessity have been complied with. Where
then is there any room for irregularities? *Delaplaine v.
Cook,* 7 Wis., 53, 54; *Allen v. Armstrong,* 16 Iowa, 508;
*Sprague v. Pitt,* McCahon, 212.) If it could be shown, as
the plaintiff below claims it might, that the assessor did
not receive from the county clerk before he made the
assessment, the assessment roll of the preceding year, nor
the list of taxable land, these mere irregularities could
not invalidate the assessment, nor the taxes, nor the deeds
founded upon such taxes.

As a third objection to the introduction of said tax
deed in evidence, the plaintiff below claims that the said
4. —— and pre- *tax deed was not prima facie evidence of any-*
liminary pro-
ceedings need *thing prior to its own execution, because he*
not be first pro-
ven before ad- *claims that the laws under which the deed was*
mission of deed
in evidence. *executed have been repealed without any*

saving clause, and because none of the subsequent laws making tax deeds *prima facie* evidence of all proceedings antecedent to the execution of such deeds have any retrospective operation. We think the plaintiff is mistaken as to there being no saving clause in the act repealing the laws that were in force at the time the tax deed was executed.

The lot in dispute was assessed, taxed and sold for taxes, and the deed was executed and recorded under the provisions of Chapters 197 and 198, Compiled Laws, (said laws being modified in some respects by the laws of 1863 and 1864.) On the 20th of March, 1866, these laws were repealed and a new law was enacted in their place for the assessment and collection of taxes, (chapter 118, laws of 1866.) Section 113 of this new act, contains a saving clause which reads as follows: "All proceedings, titles, etc., not completed at the time of the taking effect of this act, shall be carried to final determination and execution according to the laws in force under which they originated." The case of *Gordon v. The State, ex rel.*, 4 Kas., 489, referred to by the plaintiff below, has no application in this case. The word "proceedings" in the statute referred to in that case, (Comp. Laws, 838,) may mean judicial proceedings; but the word "proceedings" in said saving clause undoubtedly means tax proceedings, the same as it does in that clause of section 10 of chapter 198, (Comp. Laws, 878) which reads as follows: "Such deed duly witnessed and acknowledged shall be *prima facie* evidence of the regularity of such *proceedings*, from the valuation of the land by the assessor inclusive, up to the execution of the deed."

The act of 1866, besides using the word "proceed-

ings," also uses the words "titles, etc," in said saving clause, which clearly shows that it was intended to include everything in said saving clause which had any connection with taxes or tax titles. And further; as the act of 1866 which repeals the former tax laws contains precisely the same provisions with respect to the tax deed being *prima facie* evidence as the repealed laws did, it seems clear beyond all doubt that the legislature intended that all tax deeds, whether made prior or subsequent to the year 1866, should be *prima facie* evidence of title. They meant, in substance, that the new provision, which was precisely the same as the old, should simply be a continuation of the old law.

On the 15th of March, 1868, the tax law of 1866 was in turn repealed, and a new tax law enacted, which is still in force. The new law contains a saving clause which reads as follows : " All matters relative to the sale and conveyance of lands for taxes under any prior statutes shall be fully completed according to the laws under which they originated, the same as if such laws remained in force; " (§ 143 ch. 107, Gen. Statutes, p. 1063.) This saving clause is plain enough, we think, without any comment upon it. The effect of these two saving clauses in the laws of 1866 and 1868, is, as we think, to keep and continue in force all the laws of 1860 and 1862, so far as they relate to the completing and perfecting of tax titles. In the case of *Sprague v. Pitt and Burr*, (McCahon, 212,) Justice MILLER of the Supreme Court of the United States had precisely the same question before him. The tax deed in that case was in due form, executed by the county clerk of Johnson county, Kansas, to A. E. Abbott, and made and recorded on the 15th of September, 1863. On the 22d of May, 1865, Abbott

conveyed the land mentioned in this deed to the defendant Pitt. At the May Term of the United States Circuit Court for Kansas, 1868, Justice MILLER held that said tax deed was *prima facie* evidence of title to said land.

The counsel for defendants below claims that the law under which the tax deed was executed is the law which determines its effect; that if it was *prima facie* evidence under the law when it was executed, it will continue to be *prima facie* evidence notwithstanding any subsequent repeal of the law. In effect he claims that the holder of the tax deed has a vested right in the effect that shall be given to his tax deed, which cannot be disturbed by any subsequent legislation. Upon this question we shall express no opinion. After the statute of limitations has fully run in favor of a tax deed the question is then presented in a new and different light. The tax deed has then become conclusive evidence of many things of which before it was only *prima facie* evidence. It may well be doubted whether the legislature could then by any subsequent legislation so change the effect of such a deed that it would not be evidence of anything, or that it would be only *prima facie* evidence of what before it was conclusive evidence : (13 Wis., 347 : 17 Wis., 556, 568 ; 21 Wis., 350; 23 Wis., 367, 371 ; 19 Johns., 83.) But upon this question we shall express no opinion, as we do not think it is necessary to decide the question in this case.

It will be seen from what we have already said that it is the opinion of the court that said tax deed is of itself and alone *prima facie* evidence of everything necessary to its own validity, and is *prima facie* evidence of title in the grantee mentioned in the tax deed; and therefore

that the court below erred in refusing to permit the said tax deed to be read in evidence.

The other evidence fully showed that the defendants below held under the original grantee mentioned in the tax deed; and hence it is not claimed that the tax deed was excluded for want of such evidence.

IV. The plaintiff below, however, claims that the other evidence in the case shows that the said tax deed is void, and therefore that the error of the court in excluding the tax deed did not affect the substantial rights of the defendants. If said tax deed is void (it being *prima facie* valid,) it devolves upon the plaintiff below to show that it is void. He may use the evidence of the defendants as well as his own, however, to do so, and if all the evidence in the case taken together shows that the tax deed is void, the defendants of course are not injured, and have no right to expect that the judgment of the court below will be reversed for such error.

There are many irregularities that will render a tax deed void before the statute of limitations has run in its favor which will not render it void afterwards; or rather, there are many irregularities which may be shown in evidence that will invalidate the tax deed before the statute has run, which cannot be shown afterwards for that purpose. Whether there were any irregularities which would invalidate this tax deed before the statute had run, may be questioned; but without deciding this question we will pass to the next and see whether the statute has run. For if the statute has run there has been nothing shown in this case, as we think, which will invalidate this tax deed.

The plaintiff does not claim that his lot was not subject to taxation; nor that there was any want of author-

ity on the part of the taxing officers; nor that he had paid the taxes; nor that he had redeemed the lot from the taxes; nor that he had any right to redeem the same from the taxes for a longer period than two years by rea-son of himself or Clark (whose interest he claims by virtue of his sheriff's deed,) being under some legal dis-ability, (§ 51, Comp. Laws, 869; § 80, Laws of 1866, p. 279; § 101, Gen. Stat. 1051;) nor that there was any fraud on the part of any one connected with the tax title that would vitiate the deed; nor is there any ques-tion raised in this case but that the plaintiff's cause of action, if he ever had any, (that is, if the tax deed was either void or voidable,) accrued as soon as the tax deed was recorded, the holders of the tax deed being in actual possession of the property at that time, and continuing in actual and exclusive possession ever since. Whether any one or all of the irregularities or defects just men-tioned would invalidate the tax deed, we do not now decide; but we do think that no other irregularity or defect could invalidate a tax deed, good upon its face, after the statute of limitations had run in its favor.

V. But there is a question raised by the plaintiff be-low concernig the possession of the property by the hold-ers of the tax deed which we will consider before proceeding further.

*5. Person in pos-sion may take tax deed.*

John Geo. Brown, to whom the tax deed was made, was in actual possession of the lot in dispute, at the time and before it was assessed or taxed or sold for taxes, and at the same time and before the tax deed was made. The plaintiffs therefore claim that Brown could not take or hold a good tax title to said lot. But there is no evidence that tends to show that Brown was under any obligation, legal or moral, to pay the taxes on said lot, or

that he committed any fraud in taking the tax title to himself. The lot was not assessed nor taxed to him, nor in his name; and if it had been, if no fraud is charged, it would pobably make but little difference in this State, where taxes on land are not so much debts against the individual to whom they are assessed, as they are debts against and liens on the land itself. We know of no good reason why Brown should not have been able to receive and hold as good a tax title as could be received and held by any other person. The Supreme Court of California says: "If the defendant was under no legal or moral obligation to pay the taxes, there is no principle of law or equity which precludes him from purchasing at the sale, although in possession at the time the assessment was made or when the land was sold." (*Moss v. Shear*, 25 Cal., 38, 45, *et seq.*

"One in possession of a tract of land at the date of the assessment may purchase at the sale, unless it appears that he was bound to pay the taxes, in which event he can acquire no title by his purchase." (Blackwell on Tax Titles, 2d ed. 400, *et seq.*)

VI. We shall now return to the question of the statute of limitations. That there was such a statute in force at the time this tax deed was made and recorded, which would have barred the plaintiff's action for the recovery of said lot in two years after said deed was recorded, if said statute had not been repealed, will not and cannot be denied: (sec. 11, Comp. Laws, 879;) and that so soon as and at the same time that any one such statute has been repealed, another of the same kind has been re-enacted is equally true; ( § 90, laws of 1866, p. 284; sub-div. 3, § 16, Gen. Stat., 633; § 116; Gen. Stat., 1057.)

*6. Statute of Limitations— Tax deeds—action barred in two years.*

. But the plaintiff claims that none of these statutes have barred his action for the following reasons: *First,* Such statutes are unconstitutional, being in contravention of article 2, section 16 of the constitution, and particularly so when it is attempted to give them a retrospective operation. *Second,* Neither of said statutes was in force for a length of time equal to two years after said deed was recorded and before this action was brought, and therefore neither of them could alone bar the plaintiff's action. *Third,* It was not intended by the legislature that the statutes of 1866 and 1868 should have a retrospective operation. *Fourth,* It is not within the power of the legislature to give said statutes a retrospective operation, even if such was their intention.

There is another objection urged against the act of 1868; but as we think those acts are not applicable to this case, (for reasons we shall hereafter give,) we will not consider that objection. As to the objections above mentioned, we think the plaintiff is incorrect. The statutes referred to are not unconstitutional. Section 16, of article 2 of the constitution reads as follows: "No bill shall contain more than one subject, which shall be clearly expressed in its title; and no law shall be revived or amended, unless the new act contains the entire act revived, or the section or sections amended; and the section or sections so amended shall be repealed." The title of our tax law is as follows: "An act to provide for the assessment and collection of taxes." It is claimed that this title is not broad enough to include a statute of limitations. We think, however, that that depends upon the nature, the object, and the office of the statute of limitations, and what functions it is designed to perform. If it is a statute to aid in the collection of taxes—to

7. STATUTES—Title of—Constitutional law.

enforce their prompt payment, it may undoubtedly be included in such a title; and that such is the design and object of all our statutes of limitations for tax deeds, no one will controvert.

If, however, we attempt to give such statutes a retrospective operation, so as to include tax deeds executed before the passage of the statute, as well as afterwards, more difficulty occurs. But when we are made to understand that the taxes are not finally and absolutely collected, until the tax deed becomes absolute and final, the difficulty is removed. The person who buys land at tax sales pays the taxes on such lands, only conditionally. If the sale is invalid, the money that he has paid is still in law and equity his, and the county commissioners are bound to refund it to him with interest and costs, and this they are required to do as well after the tax deed is executed as before; § 60, Comp. Laws, 871; § 85, Laws of 1866, p. 280; § 121, General Stat., 1058.) The statute of limitations by its operation therefore, converts what was a conditional payment of the taxes into an absolute payment of the same. Hence we see that these statutes, while acting retrospectively, are made to assist in the collection of taxes, and may therefore be properly placed in the tax laws. Section 16, article 2 of the constitution should be liberally construed, otherwise the legislature would be confined within such narrow rules that they would be greatly embarrassed in the proper and legitimate exercise of their legislative functions. "No bill shall contain more than one *subject*, which shall be clearly expressed in its title;" but this subject may be broad and comprehensive, or it may be narrow and limited. It may embrace the entire common law of England, with all the English statutes of a general nature down to the fourth

year of the reign of James the First, (Comp. Laws, 678,) or it may embrace only the change of the name of some private and obscure individual.

Suppose the legislature should pass an act entitled, "An act to establish a code of laws;" would not the subject expressed in such a title be comprehensive enough to include every general law found within our statute books? And can there be any doubt that the legislature would have power to do just such a thing? Probably no sane person will contend that the subject must be the narrowest possible subject that can be conceived; that it must be so narrow and limited that it cannot possibly be again divided or subdivided into narrower and smaller subjects. If such is the meaning of the constitution, almost every act that the legislature has ever passed has been in contravention of the constitution. While it is admitted that there must be but one subject in the title of a bill, and that that subject must be clearly expressed, yet we think it must always be left entirely within the discretion of the legislature to say how comprehensive and general, or how narrow and limited that subject shall be. This we think is the true construction of the constitution: 4 Cal., 388; 10 Cal., 315; 6 O. St., 176, 180; 26 Iowa, 345; 19 N. Y., 116; 16 Mich., 277; 4 Ala., 98 et seq.; 2 Metc., (Ky.) 169, 221; 2 Iowa, 282, et seq.; 9 Iowa, 107; 3 O. St., 484; 15 id., 604; 11 Iowa, 282; 8 N. Y., 241, 252; 31 Barb., 572; 15 Tex., 311.

The next objection to these statutes is that they were not in force a sufficient length of time to bar the plainitiff's action. The statute under which this deed was made and recorded was in force only about nine months after said deed was recorded, when it was repealed. The next statute (that of 1866) was in force not quite two

years, lacking five days, when it was repealed; and the next statute (that of 1868) was in force only about fifteen months when this action was commenced. Under each of these statutes—two years must have elapsed, says the plaintiff below, before this action could be barred. The first statute, however, the one under which the deed was made and recorded was continued in force as to all matters not fully completed, by virtue of a saving clause in the repealing act, (section 113, Laws of 1866.) Said first statute was not absolutely repealed, as plaintiff claims, but it was kept alive by said saving clause, and his action was barred by the same. We would here refer to what we have already said concerning said section 113, and its continuing in force the statutes which made the tax deeds *prima facie* evidence of title.

The next statute, chronologically considered, (that of 1866,) is retrospective in its operations, and applies as well to tax deeds recorded before its passage as to those recorded afterwards, provided of course that the statute a reasonable time to run, after its passage and before the action was barred. Said act read as follows: "Any suit or proceeding for the recovery of lands sold for taxes, except in cases where the taxes have been paid or the land redeemed as provided by law, shall be commenced within two years from the time of recording the tax deed of sale, and not thereafter;" (§ 90, Laws of 1866, 284.)

The counsel for the plaintiff below are mistaken when they suppose "that the legislature did not intend any of the provisions in the tax law of 1866 should have application to anything done under the tax law of 1860;" for in said section 90 there is a provision "that before any suit or proceeding shall be commenced for the recovery of any land *heretofore* sold or hereafter to be sold for taxes," etc.,

showing clearly by unmistakable language that the legis--
lature intended that this latter provision should apply to
all tax sales, whether made under the laws of 1866 or
1860, or under any other laws.

But the plaintiff below claims that it is not within the
power of the legislature to pass a statute of limitations
applicable to tax deeds already made and recorded, even
if such should be their intention. We have already con-
sidered the question of the power of the legislature to
insert a statute of limitations within the tax law. We
shall now consider the power of the legislature to pass
such a statute without regard to where they may put it,
which shall act retrospectively on tax deeds already made
and recorded.

It is admitted that is not within the power of the leg-
islature to give one person a cause of action against
another, either retrospectively or prospectively, when
such first-named person has not been injured and when
he is in the full possession and enjoyment of all his
rights. It is admitted that it is not in the power of the
legislature to create a cause of action out of an existing
or a previous transaction, for which there was at the time
of its occurrence no legal liability, except perhaps in
certain cases, when the legislature can create a cause of
action to enforce an already existing moral obligation.
(For a correct understanding of what we mean by this
last proposition, see *Weister v. Hade*, 52 Penn., 479, 480,
481, and cases there cited.) It is admitted that it is not
within the power of the legislature to compel the party
in whose favor a cause of action is thus created or
attempted to be created, to sue the other party within a
specified time, or to be divested of property which he
owned before the act of the legislature was passed, or

22

be divested of any right or property that he did not obtain by virtue of said act. It is admitted that statutes of limitations can never operate except to *bar actions;* and can never operate to disturb vested rights. They can never operate where no cause of action exists; and can never operate except when rights have already been disturbed. The effect of the operation of the statute of limitations is not to create a cause of action; its effect is to take away a cause of action already created by acts of one or both of the parties. The effect is not to disturb rights, nor to transfer property; but to leave rights and property just where the parties themselves have voluntarily chosen to leave them during the running of the statute. The statutes of limitations simply say this to the party injured: "You have voluntarily allowed your property (real or personal as the case may be,) or the money you claim as compensation for some injury done to you, (on either contract or tort,) to remain in the possession of your adversary during a certain period without any effort to recover it, and now we will allow it to remain in the same place and in the same condition forever."

When the legislature enacted the tax laws of 1866, they did not create nor attempt to create a cause of action against or in favor of any one. If the tax deed in question at that time was absolutely good, it remained good; and the original owner of the land never had any cause of action against the holder of the tax deed, and the latter had no need of any statute of limitations. If the tax deed was absolutely void, (so void that it could convey no title, nor affect any rights,) it remained absolutely void; and in such case if the holder of the tax deed never took possession of the property, no cause of action ever existed in favor of the original owner of the land for the

recovery of the same, for none of his rights had ever been disturbed. In the latter case, as in the former, where the tax deed was absolutely good, the statute of limitations could not apply. It is only when a tax deed is good *prima facie*, and when on account of some irregularity in the tax proceedings the deed is void, or more properly speaking is voidable if attacked, that the statute of limitations can apply. In such a case the original owner of the land has been injured by the holder of a tax deed setting up a *prima-facie* title to his land under a deed that is defective and voidable, and his cause of action accrues at least as soon as the tax deed is recorded. In the case at bar the plaintiff's cause of action (if he ever had any,) existed about nine months before the statute of 1866 was passed. At the time said tax law was passed, the holders of the tax deed were in actual possession of said lot, claiming title thereto under said tax deed, which was then *prima facie* evidence of title, and which, if not impeached, would, in time, become conclusive and absolute evidence of title. If there was anything wrong in this tax title, whereby the plaintiff below was injured, the injury was sustained long before this act of the legislature was passed, and the said tax deed was liable to be adjudged void. There was at the time that act was passed, if ever, a present and existing cause of action in favor of the plaintiff below, and against the holders of the tax title, which the legislature has an undoubted right to bar by a statute of limitations, provided they gave the plaintiff a reasonable time in which to commence his action.

This tax deed was recorded June 24th, 1865; said statute took effect March 20, 1866. The statute therefore had about fifteen months to run after this act took

effect and before the plaintiff's action was barred, which was a reasonable time. Under this statute, as well as under the prior statute, the plaintiff's action was barred" June 24th, 1867, which was before the laws of 1868 were passed, and for this reason we think that the laws of 1868 upon this point can have no application in this case. After a cause of action is once barred by a statute of limitations it is not in the power of the legislature to revive it by subsequent legislation; 6 Wis., 527; 11 Wis., 371, 432, 442; 13 Wis., 245; 8 Blackford, 506; 2 Ind., 647; 3 Littell, 137; 1 English, 495, 496; 5 Metc. (Mass.) 400, 411; 3 N. H., 473; Angell on Limitations, 19, note, and cases there cited. (But see the case of *Swickard v. Bailey*, 3 Kas., 507, 513, and the distinction there made between limitations and prescriptions.) But even if the legislature of 1868 had any control over this matter, if they could repeal the former laws so as to revive the plaintiff's cause of action, still they did not do it, but they continued the former laws in force by a saving clause, (§§ 143, 144, General Stat., 1063,) and re-enacted the limitation laws substantially the same as the former limitation laws; (Gen. Stat., subdiv. 3, § 16, p. 633; § 116, p. 1057, also §§ 7 and 8, p. 1128.)

In the case of *Sprague v. Pitt*, already referred to—a case almost exactly parallel with the one at bar—Justice Miller decided that when two years have elapsed after the recording of the tax deed and before the action is brought, the action under the laws of Kansas is barred; (McCahon, 212.)

In our opinion the legislature have clearly shown that they intended that no tax deed that has ever been executed in this State, which is not clearly good against all attacks without a statute of limitations, and which is

not so absolutely void that a statute of limitations could not cure its defects, should be left unprotected by a statute of limitations.  It has been found necessary in this State for the legislature to pass stringent laws for the collection of taxes.  Every person is morally bound to pay his taxes; he cannot in equity and good conscience shift the burden of supporting the government entirely upon the shoulders of others.  If he fails and refuses to pay his taxes, it is but just that he should forfeit the property upon which such taxes are imposed.  The legislature have passed stringent laws to compel the owner of property to pay his taxes, and at the same time they have, as a wise and prudent measure, offered great inducements to others to pay them, provided he fails to do so.  Among these inducements, is the statute of limitations, protecting the title of a purchaser at a tax sale, after two years from the recording of his tax deed.  It would not now be very creditable to the State nor to the courts, to refuse to carry out and enforce these laws which offer these inducements.  Every one ought to know whether his land is taxable or not, and every one is presumed to know the law.

These statutes are not ambiguous or equivocal on this question.  The only hope of those who refuse and fail to pay their taxes is, that the courts through sympathy with those who are about to lose their property for a small sum will refuse to execute the will of the legislature; that the legislature through inadvertence has made some slip, or left open some loop-hole, or have not expressed themselves in language as clear as the noonday sun, whereby the court will find some plausible pretext for refusing to. execute the law.  While it is generally true that the person who fails to pay his taxes

deserves but little if any sympathy, yet it is not always so; and it often happens that the holder of a tax title who desires to take the property of another for a very small amount, deserves almost anything except sympathy. Very hard cases are sometimes presented to the courts, and in such cases courts will sometimes exercise all their ingenuity to find some plausible ground for deciding against the tax title. This is human, and in one sense excusable; but the legal duty of courts is only to expound the law, and they are not responsible for its consequences.

There can be no doubt of the power of the legislature to pass just such laws as we have been discussing. The highest tribunal of this nation has sustained laws almost identical with ours; *Leffingwell v. Warren*, 2 Black, 599; *Pillow v. Roberts*, 13 Howard, 472; *Witherspoon v. Duncan*, 4 Wallace, 210, 217. " Statutes of limitations are now regarded favorably in all courts of justice. They are considered as statutes of repose; usually they are founded in a wise and salutary policy, and promote the ends of justice; 2 Black, 606; 13 Howard, 477; *Tolson v. Kage*, 3 Brod. & Bing., 217; *Lewis v. Marshall*, 5 Peters, 470.) When the legislature so wills it, owners of land must pay their taxes or forfeit their lands to others who will pay them. Our decision in this case is, that the tax deed offered in evidence was good upon its face; that it was *prima facie* evidence of title; and that the statute of limitations had run in its favor when this suit was commenced, and therefore that the court below erred in refusing to permit said tax deed to be read in evidence, especially the second time it was offered, and that said error was a substantial one, for which the judgment of the court below must be reversed.

All the Justices concurring.