## PIERSON v. DAVID et al.[1]

Where there are several respondents to a bill in equity, against whom the same claim to relief is made, some of whom deny the right of the complainant to the relief sought, while others allow defaults to be entered against them, the complainant is not entitled to a decree against those in default, unless he establishes his right to the relief prayed for against those who have appeared.

A complainant in Chancery is required to satisfy the chancellor that he is entitled to relief, although there has been no appearance by the respondent.

If the proof made, shows a want of equity in the complainant's case, he must fail in his suit.

P. having a "claim" or "settler's right" on a certain tract of land, on the 13th of August, 1838, by a written agreement, sold the same to W. for the consideration of $1,500. This agreement was filed for record on the 9th of December, 1838, but was never acknowledged. C. and D. having actual notice of said agreement, in March and April, 1839, purchased the interest of W. in the land, and on the 12th of the latter month, P. on the margin of the record· where said agreement was recorded, made and signed an entry of satisfaction as follows: "I hereby relinquish all my right, title, interest and claim to the within described property, for value received." The land was entered in the years, 1839, 1840 and 1841, by different individuals, and in different parcels. A portion was pre-empted in 1840, by one P. and another, at which time, P. (the complainant) as one of their witnesses, made oath, that he had no interest in said land, and that so far as he knew, there was no other claim thereon, than that set up by the pre-emptors. P. never resided on this land, and at the time of his sale to W. had a claim or claims on a section or more of government land, besides the tract in controversy. The sale to W. was made with the understanding that W. was to hold the claim for P. for an agreed consideration, and P. was to furnish the money to enter the same, and then take the conveyance from W. When P. sold to W., the claim was worth about the sum stipulated in the agreement. Several years since, a portion of the land was laid off into lots, as additions to the town of Burlington, since which, many valuable improvements have been made on it, and the premises are now worth from $75,000 to $100,000. P. has constantly since 1835, resided near the land, and passed over or near it, during that time, at least once each week. He has also, taken title to some of the lots so laid off on said land, from the original proprietors or their grantees, and again contracted to sell the same. W. left the county for parts unknown, soon after his sale to D. and C., insolvent, and until the last five years, P. has set up no right or claim to the premises, under his contract

---

[1] This cause was decided at the June term, 1856, but was overlooked at the time when the decisions of that term were prepared for the press.

with W.—nor is any reason shown for the delay.   On bill filed by P. asking a decree for the land, or that he may have a lien on the same, for the purchase money under the contract with W.; *Held*, That P. was not entitled to relief.

## *Appeal from the Des Moines District Court.*

THIS case was before this court at the June term, 1855, on a demurrer to the complainant's bill.   See 1 Iowa, 23. This demurrer was overruled, and cause remanded, with leave to defendants to plead or answer over.   Since that time, complainant has amended his bill, asking that the land in controversy may be decreed to him; making other persons, (who claim the land as subsequent purchasers from the original patentees,) parties; and containing still, an alternative prayer, that if the court cannot, under the circumstances, decree him the land, he may have a judgment for what he claims is the purchase money due and unpaid; and that the same be made a lien on the premises.   As shown by the former opinion, complainant commenced this suit in August, 1854, and bases his claim to this land, upon a "claim or settler's right," thereto, which he alleges he sold to one Wilson, for the sum of fifteen hundred dollars, on failing to pay which, when the land was entered, the premises were to revert to complainant.   He charges that this money never has been paid, and that David and Cameron purchased this claim of Wilson, with knowledge of this contract, and for the purpose of defrauding complainant.   Some of the defendants are minors, who, with most of the adult defendants, deny by their answers, each and every sustained allegation contained in the bill.   Some of the defendants make default. A portion of them, also, plead the statute of limitations, and satisfaction or payment of the amount due and owing said complainant on his said contract with Wilson.   The answers also deny notice of complainant's claim to this land, or of said contract, and aver that the respondents are purchasers without notice.

The material facts, as now presented by the depositions and exhibits, are as follows:   The agreement between com-

plainant and Wilson, was made August 15th, 1838, and was filed for record December 9th, of that year, but was never acknowledged. Cameron and David were the only parties who had actual notice of said agreement, before making their respective purchases. They purchased Wilson's interest in March and April, 1839, and on the 12th of the latter month, complainant, on the margin of the record where said agreement was recorded, made the following entry of satisfaction:

" I hereby relinquish all my right, title, interest and claim to the within described property, for value received. April 12th, 1839.                          JOHN PIERSON."

The land was entered in the years 1839, 1840 and 1841, by different individuals, in different parcels. A portion was pre-empted in 1840, by one Patterson and another, and at that time, complainant, as one of their witnesses, made oath that he had no interest in said land, or said pre-emption claim; and that, as far as he knew, there was no other claim thereon than that set up by said pre-emptors. Complainant never resided on this claim, and at the time of his sale to Wilson, had a claim or claims on a section or more of government land, besides the tracts in controversy. It is also shown, that this sale was made with the understanding, that Wilson was to hold the claim for complainant, for an agreed consideration; and that complainant was to furnish the money to enter the same, and then take the conveyance from Wilson. When Pierson sold to Wilson, the claim was worth about the amount stipulated to be paid in the bond. Several years since, a portion of the land was laid off into lots, as additions to the city of Burlington—many valuable improvements have been made thereon—and the premises in dispute are now worth from seventy-five to one hundred thousand dollars. Complainant has continually since 1835, resided near this land, and passed over or near it, during that time, at least once each week; and he has himself taken title to some of the lots so laid off on said land, from the original proprietors or their grantees, and again contracted to sell the same.

The consideration paid for the discharge of said agreement by complainant, was small, but the amount thereof, by whom paid, or under what circumstances, is not shown otherwise than by the said written entry itself. Wilson left the county, for parts unknown, soon after his sale to Cameron and David, insolvent; and until the last five years, complainant has set up no right to, or claimed any lien upon, the premises, under his contract with Wilson; nor is there any reason shown for this delay. The court below found for the respondents, and dismissed complainant's bill, and he appeals.

*James Green,* for the appellant.

*Browning & Tracy, Starr & Phelps* and *D. Rorer,* for the appellees.

WRIGHT, C. J.—We have no hesitation in concluding, that the decree below should be affirmed. Without referring to several, not to say many grounds, on which the correctness of this decree might be sustained, it is enough to place it upon one, which we think is quite sufficient to dispose of the case. We allude to the fact, that complainant has been paid, or received satisfaction, for his interest in the claim which he sold to Wilson, and which forms the basis of his whole action. For it is obviously true, that if the consideration money has been paid, or that which is the basis of complainant's right of action, has been met or discharged, his action must fail—even though every other question involved in the case might be determined in his favor. There is no testimony throwing any doubt upon the fact, that complainant did sign this entry of satisfaction. There is no fraud or mistake of any character, shown; nor is it pretended or proved, that when signing it, he was in ignorance of his right. It stands as a simple entry of satisfaction, unexplained and unimpeached. And yet, in the face of this fact, established by the record most conclusively, we are asked, after the lapse of fifteen years, when this land

has appreciated in value to an almost fabulous extent—after numerous *bona fide* purchasers without notice, for a valuable consideration, have acquired interests therein, and made valuable improvements thereon—and notwithstanding complainant had notice of the same, by his vicinity to the premises, and passing by and seeing the progress thereon, and after he has himself recognized the title which he now attacks, by purchasing under the same, without, as far as shown, any want of knowledge as to the true state of the title, we say, and yet, notwithstanding all these circumstances, we are asked to conclude, without evidence, that this entry was a mistake, or did not operate to discharge complainant's claim to the land, and hence cannot now defeat his action.

The counsel for appellant, however, in order to avoid the effect of this receipt, or entry of satisfaction, interposes several objections to its sufficiency. He treats it as a deed of release, and says it does not conclude complainant, because it had no *seal, witness, acknowledgment or release.* In making these objections, we think counsel entirely misconceive the nature and character of this writing or entry, so signed by Pierson, as stated when the case was formerly under consideration. Equity treats Wilson as a mortgagor, and Pierson as a mortgagee, under this instrument, and (taking the facts in the petition to be true as the matter then stood), that Pierson had a right as such equitable mortgagee, to a vendor's lien to secure the purchase money. And as an ordinary mortgage may be entered as satisfied by the mortgagee, on the margin of the record, when recorded, without the formality of a *seal, witness, acknowledgment,* or naming a *release,* so as to afterwards bind him, so may this equitable lien be so discharged. And while it is true, that by the ancient principles of the common law, a contract could only be dissolved, by the same solemnity with which it was created, yet it is also true, that as commerce and contracts have extended and multiplied, this rule, so far as the formality of a seal is concerned, has been found inconvenient, and but little regarded. Hence, at this time, if it is shown

that a debt has been paid, a court of equity, at least, will give relief, though the acquittance may not be evidenced in accordance with the old rule.  Suppose it was proved by parol, that this money was paid, either by a person who was present at the payment, or by the admission of complainant, could it be claimed that he should be allowed to again collect it?  If not, it appears to us, that the case is stronger against him, where he acknowledges its receipt in writing, though such writing may not be under seal.  Counsel mistake, also, when they assume that this discharge is in the nature of a conveyance or release of real estate.  This bond, as in the case of mortgage, (treating the claim right in this instance, for the purposes of the requirement, as real estate), is in the *form* of a conveyance, or an instrument creating an interest therein, but, in *substance*, it is but a security for the payment of the money ; and when the debt or consideration is paid, the mortgagee becomes the trustee of the mortgagor, or vendor, and the trust property is in equity discharged of the lien.    *Wentz and wife* v. *Dehaven*, 1 Say & Ravo. 312, and authorities there cited ; Powell on Mortgage, (3d ed.) 53 ; *Simpson* v. *Ammons*, 1 Binn. 177 ; *Martin* v. *Mowlin*, 2 Burr. 979.  And we may, with propriety, adopt the language of the latter case, and say, it would be most injurious, and against all good conscience, if after the lapse of fifteen years, during which the subsequent purchasers have relied on this satisfaction, this complainant was allowed to recover either the land or the consideration. To allow him to do so, under the circumstances of the case, would shock all of our ideas of the duty of a chancellor, or the purposes and principles which govern courts'of justice. If there was any doubt as to the execution of this receipt— or any testimony to show that it was obtained by fraud— the case would of course stand upon a different ground.  We do not understand, then, that when this receipt was given, our law required anything more formal than that which the complainant adopted, and by which we are fully justified in saying, he regarded himself bound, for years afterwards, under circumstances that repel all idea that he was ignorant

of the condition of the property, and the accruing rights of others or his own.

It is further said, however, that some of the defendants made default, and as to them it was error to dismiss complainant's bill. . But it must be remembered, that complainant makes his claim against such defendants, for the same title or right that he does against those that did appear, and none other. That right he was bound to establish, so as to satisfy the chancellor that he should have relief, though there had been no appearance by any of the defendants. And though neither of the defendants had answered, if the proof made, shows a want of equity in complainant's case, he must fail in his action. We think he does not show himself entitled to the relief; on the contrary, we cannot but think that every prominent circumstance in the case, negatives his claim ; and he should have no greater relief against those in default, than against those who have in fact answered.

We might place the affirmance of this decree upon other grounds, equally as satisfactory, as the one above stated. There are to our minds, several upon which the decree below might be sustained. But without extending an opinion, upon a case that we think is so entirely free from difficulty, we have deemed it only necessary to notice this one.

Decree affirmed.