Curtis v. Smith.

CURTIS ET AL. v. SMITH ET AL.

1. **Conveyance**: QUIT CLAIM DEED: NOTICE. A quit claim deed to a grantee, who has notice that his grantor has previously conveyed his interest in the property, conveys to the grantee no right, title or interest in the property sought to be conveyed.

2. **Tax Deed**: ASSIGNMENT OF CERTIFICATE: FRAUD. B conveyed to M and, before the deed was recorded, he conveyed the same property by quit claim to S; meanwhile the land had been sold for taxes, and S acquired from the tax purchaser his certificate and subsequently obtained the deed: *Held*,

    1. That the tax title would not be invalidated even if assigned by the tax purchaser in the belief that S was the owner of the land and entitled to redeem.

    2. That if the assignment was effected by fraud or misrepresentation, the assignee, and not those having an hostile interest to the tax title, could complain.

3. ———: WHO MAY ACQUIRE. Any one may become a purchaser at a tax sale who has no interest in the property sold and is under no obligation to pay the taxes thereon; and possession under a deed which conveys no interest will not disqualify the grantee to purchase the property when sold for taxes.

4. ———: ———: TRUSTEE. One who holds a quit claim deed to property previously conveyed does not, *ipso facto*, become a trustee for the grantees of the former conveyance, and may purchase the property at tax sale.

5. **Practice**: DEFAULT BY SOME OF THE DEFENDANTS. If one of several defendants in an equitable action makes default, and the plaintiff's action is not sustained as to those who appear, default cannot be entered and judgment rendered against the party failing to appear, and the petition should also be dismissed as to him.

*Appeal from Adams Circuit Court.*

WEDNESDAY, APRIL 5.

ACTION in chancery to establish and quiet the title of certain lands in plaintiffs. Upon a hearing on the merits a decree was entered dismissing plaintiffs' petition, from which they appeal.

*Maley & Mitchell* and *Wright, Gatch & Wright*, for appellants.

The *onus* is upon the subsequent purchaser to show that he made his purchase in good faith and for a valuable consideration. (*Sillyman v. King*, 36 Iowa, 207; *Phillips v. Blair*, 38 Id., 649.) The conveyance by quit claim passes the title as the grantor held it, and the grantee takes only what the grantor could lawfully convey. (*May v. LeClaire*, 11 Wal., 232.) Such a conveyance implies that the grantee had notice of the imperfections of his grantor's title. (*Miller v. Tigley*, 23 Ark., 735.) A deed which simply purports to pass the right, title and interest of the grantor, will not affect the operation of a prior, unregistered mortgage. (*Bragg v. Paulk*, 42 Me., 502.) One holding under a quit claim deed is not to be regarded as a *bona fide* purchaser without notice of outstanding equities. (*Watson v. Phelps*, 40 Iowa, 482.) A tax deed to one in possession, and who is bound to pay the tax, is void. (3 Wash. on Real Prop., 546.) The rents and profits being defendant's, he was bound to pay the taxes. He was trustee for the land owner. (*Piatt v. St. Clair's Heirs*, 6 Ohio, 238.) See also, *Hunt v. Rowland*, 22 Iowa, 53; *Thomas v. Stickle*, 32 Id., 71; *Douglas v. Dangerfield*, 10 Ohio, 152. One in possession of and claiming title to land can acquire no additional right by a tax deed. (*Stears v. Hollenbeck*, 38 Iowa, 551; *Lacy v. Davis*, 4 Mich., 140; Blackw. Tax Titles, 400; *Glancy v. Elliott*, 14 Ill., 456.) Since defendant knew when he made the purchase that he was acting in fraud of the real owner, he cannot take profit thereby, but holds what he did get for the benefit of the party he sought to defraud. (Hill on Trustees, 218; Rawle on Cov., 411, 426, 427, 428.) The defendant, purchasing with notice of plaintiffs' title, is to be treated as trustee for them. (Hill. on Real Prop., 339–40.) If the grantees of a fraudulent purchaser are to be treated as innocent, he must respond in damages for the value of the land to the equitable owner. (*Sullivan v. McLenan*, 3 Iowa, 437; *Ryan v. Doyle*, 31 Id., 53.)

*Stuart Brothers*, for appellees.

The law never implies and a court of equity never presumes a trust to exist, except in case of absolute necessity. (2 Story's Jur., § 1195; *Cook v. Fountain*, 3 Swanst., 591.) A claim of title to land will not preclude one from becoming a purchaser at tax sale, unless he was in possession at the time the tax was assessed, or unless he was under contract relations with some one else which should estop him from setting up title under such a purchase. (*Blashwood v. Van Vliet*, 30 Mich., 118.) The grantee under a quit claim deed of premises previously conveyed with the stipulation that the purchaser shall pay the taxes, does not, under such quit claim deed, become liable for the taxes. (*Pitman v. Connor*, 27 Ind., 337.) Until the grantee has paid for the land, he holds adversely to his grantor, and may disclaim his title and purchase an outstanding title and claim under that. (Bigelow on Estoppel, 415; *Winlock v. Hardy*, 4 Litt., 272; *Jackson v. Huntington*, 5 Pet., 402; *Vorhees v. White*, 2 A. K. Marshall, 27; Rawle on Cov., 3d ed., 268.) Plaintiff cannot complain of any fraud practiced by defendant in procuring the tax title from his assignee. (*Porter v. Lafferty*, 33 Iowa, 254.) One not in possession when taxes are assessed, and under no obligation to pay them, may purchase at tax sale. (*Smith v. Lewis*, 20 Wis., 350; *Warren v. Fish*, 7 Minn., 482; *Rutherford v. Newman*, 8 Id., 47; *Lybrand v. Haney*, 31 Wis., 230; *Kelsey v. Abbott*, 13 Cal., 609; *Moss v. Shear*, 25 Id., 38.) There is no rule to prevent one who holds a defective title, although in possession under claim of title, from purchasing a better title at tax sale. (Blackw. on Tax Titles, 3d ed., 395; *Cox v. Gibson*, 3 Casey, 160.) After a tax title has matured in the hands of a stranger, one tenant in common may purchase such tax title to the entire premises and hold the same adverse to his co-tenants. (*Kilpatrick v. Mathiat*, 4 Watts & Serg., 251.) One in possession at the date of assessment may purchase at the sale for taxes, unless it appear he was bound to pay the taxes. (Blackw., 3d ed., 397.)

Beck, J.—I. The plaintiffs claim the land in controversy as the widow and heirs at law of Seymour J. Curtis, deceased, who, they claim, died seized of the land by virtue of the following chain of titles:

1.   The lands were entered in 1855 by Walter C. Brock.

2.   Brock conveyed two hundred acres of the land on the first day of February, 1859, to James McMillan.   The deed was recorded October 28, 1872.

3.   McMillan conveyed to Curtis, plaintiffs' ancestor, October 9, 1871, by deed recorded October 28, 1872.

4.   Brock conveyed the remaining tract (eighty acres) October 29, 1859, to James Moore, by deed recorded October 28, 1872.

5.   Moore conveyed the last mentioned tract to plaintiffs' ancestor October 29, 1859.   Deed recorded October 28, 1872.

II.   On the 30th day of May, 1870, Brock, for the consideration of $1,000, executed to D. N. Smith, one of the defendants, a quit claim deed for all of the lands.

1.   In 1868 the lands were sold for delinquent taxes of previous years, as far back as 1858, to E. Y. Bergen and the usual certificate of sale was given to him, which was assigned to Smith January 3, 1871, and a treasurer's deed executed thereon to the assignor February 17, 1871.

2.   November 9, 1871, Smith conveyed all of the lands to defendant, George W. Frank.

3.   March 11, 1872, Frank conveyed an undivided one-half interest in the property to Edward K. Ginn, who is made a defendant.

4.   Afterwards Frank conveyed his remaining interest in all the lands to another defendant in the action, McNair. Other defendants acquired an interest in the property, or subdivisions of it were conveyed to them.

It is not important to a proper determination of the questions which, in our opinion, are decisive of the case, to specify more particularly the property acquired by the several defendants.

III.   It is charged in the petition that the quit claim deed

from Brock to Smith failed to convey any title or interest in and to the land, on the ground that the grantee had full notice that Brock had parted with his interest therein. It is also charged that the deed was procured for the purpose of defrauding plaintiffs. That Smith received the quit claim deed with full knowledge that the lands had before been conveyed is conclusively established by the evidence, and that he acquired an interest in or right to the land thereunder cannot be claimed. Indeed, his notice and his consequent failure to acquire any thing by the deed is not only admitted but insisted upon by counsel on both sides of the case. It may then be conceded, for the purpose of this case, that no right or interest passed to Smith by virtue of the quit claim deed. It is unnecessary to inquire into the circumstances under which it was executed or his object in obtaining it. It passed nothing to him—confers upon him no right—it is nothing. It may be kept out of view until it is presented, as we shall presently see, by plaintiffs, to invalidate another title under which defendants claim.

*1. CONVEY-ANCE: quit claim deed: notice.*

IV. Plaintiffs insist that the tax title is void for the following reasons: After Smith acquired the quit claim deed, he laid out part of the land (forty acres) into town lots. He represented to Bergen, then holding the tax sale certificate, that he was the owner of the land and had the right to redeem. In this way he induced Bergen, who credited his statement, to assign the certificate. It is claimed that the assignment was for the purpose of redemption, and such was the intention of the parties. But we are of the opinion that the evidence does not support this conclusion of fact, but the other position, that Bergen intended to pass and Smith intended to acquire by the assignment the interest of an assignee. That Bergen did assign because he supposed Smith could redeem is doubtless true, and that Smith supposed he had the right to redeem may be admitted we think upon the evidence. But let it be conceded that Smith knew he had no such right.

*2. TAX DEED: assignment of certificate: fraud.*

Upon these facts it is claimed that Smith acquired no right under the assignment other than he would hold as a redemp-

tioner. His fraud, it is insisted, deprived him of any property in the certificate and right to a deed therein. But whom did he defraud? Not the plaintiffs. They had no right nor claim to the certificate, nor is it claimed, or attempted to be shown, that his act in any way prevented them from redeeming. They were in no manner prejudiced by the fraud. They do not show that they would have redeemed, for they made no effort to that end. We cannot see how they are prejudiced by Smith having a tax title on their land instead of Bergen. Whatever misrepresentation Smith made to acquire the tax title was not a fraud upon plaintiffs. It was a fraud upon Bergen, if a fraud at all. He is the party to complain and seek relief.

If Smith honestly supposed he was entitled to redeem, the case is not different. His belief does not change the law nor the fact. If, believing he had the right to redeem, he induced Bergen, on that ground, to assign the certificate to him with the intention, on the part of both, to clothe him with the right to take the tax deed, the fact that he was not authorized to redeem would not make the assignment a redemption. Nothing is plainer. In that case it would be an innocent mistake of the parties. But plaintiffs are not prejudiced for the very same reason that they were not prejudiced if it was a fraud. If Smith through such innocent mistake has wronged any one, it is Bergen, not plaintiffs. A state of facts presenting the question as to the effect of fraudulent representation whereby one induced the holder of a tax title to convey to him, is presented in *Porter v. Lafferty*, 33 Iowa, 254. We held that the party contesting the validity of the tax title could not complain and had no ground of relief on account of the fraud upon the holder of the tax title; he, if any one, was the party wronged and entitled to relief.

V. But plaintiffs urge that Smith could not acquire a tax title because of the quit claim deed and the fact that he was **3. TAX DEED: who may acquire.** in possession of the land. Right here we may remark that the only act of possession shown is the survey of one forty-acre tract into town lots. As we have seen, the quit claim to Smith gave him no right—it was and

is nothing. Having no right under it, he could not redeem because he held it. As it conveyed no title to him, it imposed no obligation upon him to pay the taxes. This is plain. No one has a duty resting upon him to pay taxes on land he does not own and has no interest in of any kind. The evidence fails to establish that he undertook or promised any one to pay the taxes. There was neither moral nor legal obligation resting upon him to pay them. He was, under the quit claim deed, if in the possession of the land, a mere trespasser. Under these circumstances he was not forbidden by the law to acquire a tax title on the land. We have held that an owner of land, or one under obligation to pay taxes thereon, cannot acquire a tax title so as to defeat incumbrancers or others setting up a claim or title adverse to him. This rule has been extended to tenants in common and those holding under the owner of the property. The rule is based upon the obligation of the owner to pay the taxes and the relation existing between tenants in common, landlord and tenant, and between other parties where a trust exists. But we know of no case where it is held that one who has no interest in lands, is under no obligation to pay the taxes and sustains the relation to the owner of a stranger, cannot acquire a tax title thereon. And where possession is held, neither as a tenant, trustee nor agent of the land owner, it can be no impediment to the acquisition of a tax title upon the land. *Stears v. Hollenbeck*, 38 Iowa, 550; *Hunt v. Rowland*, 22 Id., 33; *Thomas v. Stickle*, 32 Id., 71; *Smith v. Lewis*, 20 Wis., 350; *Bowman v. Cockerill*, 6 Kan., 311; *Coxe v. Gibson et al.*, 27 Pa. St., 160; *Blakeley v. Beston*, 13 Ill., 708; *Rieley v. Lancaster et al.*, 39 Cal., 354; *McMinn v. Whelan*, 27 Id., 300; *Moss v. Shear*, 25 Id., 38; *Kelsey v. Abbott et al.*, 13 Id., 609; *Lybrand v. Haney et al.*, 31 Wis., 230.

It cannot be claimed that any relation of the kind just mentioned existed between Smith and the plaintiffs who held the title to the land. The quit claim deed surely created no fiduciary relation to plaintiffs for it was obtained in direct hostility to, not under or in subordination of, plaintiffs' title. And as it carried with it nothing to Smith, it certainly could

not impose upon him the duty and obligation to pay the taxes on the lands.

VI. It is urged that Smith acquired the quit claim deed with the fraudulent intention of using it as a means of getting the tax title. Let this be admitted, but, as we have said, plaintiffs are not defrauded thereby, or deprived of any right. They could have redeemed as well after the execution of the quit claim deed as before. He did not, by that instrument, become a trustee for plaintiffs. The proposition is too plain to admit of argument.

4. ——: ——:
trustee.

VII. We need enter into no inquiry as to the condition and rights of the parties holding under Smith, whether they are purchasers with notice, etc. If Smith's tax title is not obnoxious to attack on the grounds above considered, they acquired the rights held by him, though they had notice of the matters charged against his title.

VIII. It may be remarked that the plaintiffs assail the tax title only on the grounds we have discussed. They do not allege any irregularity in its inception or consummation. As the assignment to Smith is held valid, we are required to consider no other matters affecting his title, for it alone is the ground of objection. Neither do they claim a right to redeem from the tax sale on any other ground than the fraud of Smith in procuring the assignment. We need not inquire if they held such right on any other ground.

IX. McNair, the owner of an interest in a part of the lands made default. Plaintiffs now claim that, by the default, he admits their right to recover, and a decree must be entered against him as prayed for in the petition. But Code, § 2874, provides in case of default of the defendant that, "where the action is of an equitable character, the court, upon hearing the pleadings and proofs and hearing the testimony offered, shall render such judgment as is consistent with the rules of equity." In *Parson v. David et al*, 4 Iowa, 410, this court used the following language in determining the same point under the same statute, Code, 1851, § 1833. "It is further said, however, that some of the defendants made default, and as to them it was error

5. PRACTICE:
default by
some of de-
fendants.

to dismiss complainant's bill. But it must be remembered that complainant makes his claim against such defendants for the same title or right that he does against those that did appear, and none other. That right he was bound to establish, so as to satisfy the Chancellor that he should have relief, though there had been no appearance by any of the defendants. And though neither of the defendants had answered, if the proof made shows a want of equity in complainant's case, he must fail in his action."

The foregoing discussion disposes of all questions necessary to be considered in this case. The decree of the Circuit Court dismissing plaintiffs' petition is

AFFIRMED.