## WOOD and another *v.* WELPTON and others.

### (*Circuit Court S. D. Iowa, W. D.* November 19, 1886.)

1. FRAUD—FORGED DEED—TAX SALE—REDEMPTION—BY WHOM.

    B. purchased complainants' lands at tax sale. M., by means of a forged deed from complainants' grantor, procured an assignment of the tax certificates to himself after the time of redemption had expired, and had the treasurer's deed made out to himself. *Held,* that the purchase by M. of the tax certificates could not be a redemption of the land, because M. had no real title to the land.

2. SAME—TRUST.

    *Held,* that M. could not be held as a trustee of complainants, because complainants had no interest under the tax sale.

3. SAME—WHO MAY COMPLAIN.

    *Held,* that M.'s fraud was one of which B. could complain, and for which he might rescind the contract of sale, but that complainants' rights were not affected thereby.

In Equity. Bill to quiet title.

*James A. New* and *Horace Speed,* for complainants.

*C. E. Richards* and *Smith McPherson,* for defendants.

SHIRAS, J. The subject of controversy in this suit is the ownership of 320 acres of land, situated in Montgomery county, Iowa. The complainants claim title under one Seward Wilson, who bought the land in question in 1862, the deed therefor to Wilson being recorded in July, 1862. Seward Wilson died in 1874, leaving a widow and several children surviving him. The widow and children, being the heirs at law of Seward Wilson, who died intestate, conveyed their interest in the land to Mary E. Wood, who in turn conveyed an undivided one-half interest to Leander Roberts; the said Mary E. Wood and Leander Roberts being the complainants herein. On the seventh of December, 1868, the treasurer of Montgomery county sold said lands for delinquent taxes of the years 1858 to 1867, inclusive; one P. P. Johnson purchasing the E. ½ of the S. W. ¼ of section No. 11, township 72 N., of range 37 W., and one Walter B. Beebee purchasing the remainder of the 320 acres. Before the expiration of the period of redemption, Johnson assigned his certificate of purchase to the 80 acres to one H. N. Moore, to whom the treasurer's deed was subsequently issued in proper form. The said Moore also procured the assignment of the certificate of sale to W. B. Beebee,

and received a treasurer's deed for the 240 acres sold to Beebee. The defendants claim title under these tax sales and deeds, holding under conveyances from said Moore. When ready for hearing the cause was referred to W. W. Morsman, as master, to take the evidence and report his findings of facts and conclusions of law. The master heard the cause, and reported his findings of facts, and recommended that the bill be dismissed. The court ordered a decree in conformity with the findings of the master, but subsequently granted a rehearing upon the exceptions filed to the report of the master on behalf of complainants, and upon this rehearing counsel have ably and exhaustively discussed the questions of law and fact presented by the record.

The main contention arises over the 240 acres sold at tax sale to Walter B. Beebee. In regard to this tract, it appears that an instrument, purporting to be a quitclaim deed, executed by Seward Wilson and wife, dated July 24, 1871, and conveying the land in dispute to one J. R. Welpton, was delivered to H. N. Moore at Buffalo, New York, by one John W. Sewall, to whom Moore paid $300. The complainants claim, and the master finds, that this deed is in fact a forgery, and not the deed of Seward Wilson and wife, and that Moore knew it was a forgery, and procured it as the first step in the fraudulent scheme he had devised to obtain title to the land in dispute. Moore procured a deed from Welpton, the grantee in the forged deed, and then claimed to be the owner of the land, and, as such, to be entitled to redeem the premises from the tax sales already mentioned. He endeavored to induce Beebee to assign his tax certificate to him, but at first was unable to do so. He deposited with the auditor of the county certain sums of money, and, claiming to have in fact redeemed the land, he finally, on or about the twenty-fifth of December, 1871, and after the expiration of the period of redemption, procured an assignment of the tax-sale certificate to him by said Beebee, paying him therefor the sum of $200 over and above the amount of the taxes, interest, and penalties. Having thus obtained the assignment of the tax certificate, he procured the execution of a treasurer's deed; and his grantees now claim title under and through this deed so executed.

On part of complainants it is claimed that Moore's title is obtained in fraud, and that it would be contrary to all the principles of equity and morals to permit the complainants to be deprived of their property by means so nefarious as those adopted by Moore. Certainly, no court would permit the title of a rightful owner to be divested or destroyed by means of forgery and fraud, knowingly perpetrated. The deed apparently executed by Seward Wilson and wife, but in fact a forgery, does not affect the title held by the widow and heirs of Wilson; and the defendants cannot rest their right to the lands upon this forged instrument. Their title can be made out only under the tax title derived from the sale made to Beebee. No question whatever is raised as to the validity of this sale to Beebee; and the question to be determined is whether it ripened into a title.

On part of complainants it is claimed that, in fact, redemption was made of the premises within the statutory period, and that the execution

of the treasurer's deed was therefore a void act, and wholly inoperative. To support the claim of redemption the complainants are compelled to rely upon the acts of Moore; for, unless what he did in the premises amounted to a redemption from the tax sale, none was made. Complainants aver that Moore procured the forged deed in order to make it appear upon the record that he was the owner of the land, and therefore entitled to exercise the right of redemption, and that in fact he did redeem the premises.

In the exceptions filed to the master's report it is claimed that Moore had a colorable title to the lands, and had therefore a right to redeem. Certainly, it cannot be true that a person who knowingly procures the execution of a forged deed to himself thereby acquires any title whatever to the land in such deed described. Moore had no title to the land, nor color of title, previous to the assignment of the tax certificate to him, and hence had no legal right to make redemption.

As against Bebee, the purchaser at the tax sale, a payment by Moore to the auditor of the county of a sum sufficient to redeem the lands would not work a redemption thereof, and thereby defeat the interest of the purchaser at tax sale.

Thus, in *Byington* v. *Buckwalter*, 7 Iowa, 512, it is said: "By the sale the purchaser acquires a valid and substantial interest in the land. He acquires the legal title, subject to redemption by the owner, or some one having an opposing interest. His position is, by the statute, made to resemble that of a mortgagee at common law. Third persons—those having no right nor interest in it—have no right to divest him of his interest. The doctrine concerning redemption is generally that one having any right or interest may redeem; but a mere stranger cannot intermeddle in it."

In *Penn* v. *Clemans*, 19 Iowa, 372, it is ruled that "it is settled beyond controversy that a party having no interest in land has no right to redeem it from a sale for taxes. And if it turns out that the person who pays his money for the purposes of redemption had no interest whatever to be protected by the redemption, his act of redemption can neither vest title in him, or divest that of the tax purchaser. Nor can such act of redemption inure to the benefit of the owner who had the right to redeem."

This is the well-recognized rule in Iowa, and under it, therefore, payment of the proper amount to the county auditor by a stranger to the title, will not divest the purchaser of his interest acquired at the sale; and the latter may disregard such payment, and, upon the expiration of the period of the redemption, may demand the execution and delivery of the proper treasurer's deed. If, however, the tax purchaser should consent to redemption being made by a stranger, and should accept payment of the redemption amount from him, thereby intentionally giving up his claim to the land, and receiving the money paid in exchange therefor, this would be in effect a redemption, and would inure to the benefit of the true owner of the property.

If, therefore, it was made to appear in the present case that Beebee

consented to a redemption being made of the premises by Moore, and that in fact Moore did redeem from the tax sale by payment of the proper amount, then such redemption would inure to the benefit of the complainants, as the real owners of the property at the time redemption was made. In brief, the facts of the payment are that Moore paid into the hands of the auditor the sum of $625, which lacked some $38 of being the full amount needed to perfect a redemption. An arrangement was made between the auditor and Moore to the effect that if Moore did not procure an assignment of the tax sale certificate, then this payment was to be considered as made upon a redemption; but, if he procured the certificate, then it was not. A certificate of redemption was filled out in a blank which was left attached to the book in the auditor's office, and subsequently canceled, never having been delivered to Moore.

Beebee, on the twenty-fifth of December, 1871, assigned to Moore the tax-sale certificate in consideration of the payment of $200 over and above the amount of the taxes, penalties, and interest. When this assignment was made the period of redemption had expired, and Beebee was entitled to a deed. No redemption had been perfected by any one at that time. The true owner of the property had not made any effort to redeem. Moore had made a deposit with the auditor, but not of an amount sufficient to redeem, nor was it an unconditional payment. Under the arrangement between Moore and the auditor, if Beebee assigned the certificate, the money was not to be applied by way of redemption, but would belong to Moore. It is not shown that Beebee ever consented to Moore redeeming the property. What is shown is that Beebee assigned the certificate of sale upon receiving $200 more than the sum needed to be paid in redemption. To induce him to transfer his rights, by assigning the certificate, it was represented to him that Moore had in fact redeemed, and that he was the owner of the property; but, while it is clear that a fraud was perpetrated upon him, and that he was thereby induced to assign his interest in the land, it is not shown that he consented to Moore's redeeming the land. Granting that Moore had an interest in the land, he did not perfect redemption, because he did not pay to the auditor unconditionally the full amount of the taxes, penalties, and interests. On the other hand, if he had in fact no interest in the land, then no act of his would amount to a redemption, unless Beebee consented to redemption by him, and this consent is not shown. True, there is evidence tending to show that fact, and others represented and believed that redemption had been made; but this question is to be determined by what was done by Moore and Beebee. It is proven beyond dispute that the latter did not part with his interest in the land until the twenty-fifth of December, 1871, at which time the period of redemption had expired, and then he demanded and received the sum of $200 over and above the amount he would have been entitled to upon the redemption. He knew that Moore's purpose and desire was to obtain an assignment of the certificate, not as evidence of redemption, but as a source of title, and knowing this, he demanded and received the sum of $200 over and above the taxes and penalties, and, in consideration thereof, he assigned

his interest in the premises to Moore by transferring the certificate, and his interest at that time was the ownership of the land under and by virtue of the tax title.

If the court should hold that the fraud of which Moore was guilty wholly annuls all that he accomplished by it, this would only result in setting aside the transfer by Beebee of his interest in the land, and of the tax deed issued to Moore. It could not affect the validity of the interest held by Beebee, for he is not only entirely innocent of any participation in the fraud complained of, but is in fact the only person injured thereby. When Beebee parted with his interest in the lands on the twenty-fifth of December, 1871, he was entitled to a deed, which would have vested in him a good title to the lands. By reason of the fraud perpetrated upon him by Moore, Beebee might rescind the contract, upon discovery of the fraud, and, by repayment of the money paid him, compel a reconveyance of the lands by Moore. He might, however, elect to waive this right, and treat the voidable contract as valid. If he did, then, as he had a valid interest in the land, his interest and title would vest in Moore, and the latter could rely thereon as against all other claimants of the land.

Counsel for complainants argue that, in a court of equity, it should be held that Moore holds the title derived from Beebee in trust for the rightful owners, to-wit, complainants. The latter, however, never had any interest in the tax title. Beebee held the tax title, not for complainants, but adversely to them. They had no right to demand the conveyance of this title, and Beebee could sell it to any one he pleased. If the sale by Beebee to Moore was void for fraud, then Moore would hold the title in trust for Beebee. If the latter chose to waive the fraud, then Moore became the owner of Beebee's interest and title, and, as complainants never had any interest or right therein, it cannot be held that Moore received this title in trust for them.

In *Porter* v. *Lafferty*, 33 Iowa, 254, and *Curtis* v. *Smith*, 42 Iowa, 665, the supreme court of Iowa held that a tax title would not be invalidated if the tax-sale certificate was assigned by the tax purchaser in the belief that the party purchasing the same was the owner of the land, and as such was entitled to redeem; and if such transfer of the certificate was fraudulently procured by false representations, the party contesting the validity of the tax title as owner could not complain of such fraud, and had no right of relief by reason thereof, as he was not injured or defrauded thereby.

The facts in this case show that Beebee had a valid interest in the lands as a purchaser at the tax sale, and that, on the seventh day of December, 1871, he became entitled to a treasurer's deed for the lands. On the twenty-fifth of December, 1871, he sold and assigned his interest and title to Moore. This sale was brought about by fraud on part of Moore; but Beebee makes no complaint, but recognizes the sale as valid.

Consequently, Moore, on the twenty-fifth of December, 1871, became entitled to the treasurer's deed, and the same was executed to him. Under this title the defendants now hold the lands. To defeat this title

complainants aver that, in fact, Moore, though a stranger to the title, redeemed the land before the expiration of the three years. The evidence fails to show that a redemption was in fact made, and consequently the tax title must be held to be valid; and the defendants are therefore entitled to a decree dismissing the bill on its merits, at cost of complainants.

A large part of the argument of counsel, and of the evidence, is directed to the question of the validity of the mortgage, purporting to have been executed by Seward Wilson and wife to one C. C. Knowlton on the nineteenth day of June, 1862. In the view we have taken of the case, it is not necessary to discuss the questions touching this mortgage, as the same do not affect the chain of title under which the defendants hold the lands.

The exceptions to the master's report are overruled, and decree ordered dismissing bill, at cost of complainants.