JULIUS N. SEYMOUR, *et al.*, Appellants, v. T. W. HARRISON, *et al.*, Appellees.

1. **Tax Titles:** RIGHT TO PURCHASE: HOLDER OF NAKED LEGAL TITLE. One who holds the naked legal title to real estate, but who has no actual ownership, nor other valid interest therein, is under no obligation to pay the taxes thereon, and may, upon being required to quit claim the property to the real owner, purchase outstanding tax sale certificates issued against the same while he or his grantors held the legal title as aforesaid, and thereby acquire title to the property as against the owner thereof.

2. ———: NOTICE TO REDEEM: SERVICE. Personal service in another state of the notice to redeem from tax sale upon the person in whose name the property sold is taxed, supersedes the necessity for publication of the notice as provided by statute. If the property is taxed in the name of the holder of the certificate, no notice is required.

*Appeal from Palo Alto District Court.*—HON. GEORGE
H. CARR, Judge.

SATURDAY, MAY 14, 1892.

ACTION to quiet title, and to be permitted to re-
·deem from certain tax sales and deeds issued thereon
to the defendant Harrison, upon the ground that said
Harrison was incapable of acquiring title to the land
under the tax sales and deeds, and because notices to
redeem were not given as required by law.    The defend-
ants demurred to each count of the petition and
amendment, upon the ground that the facts stated
therein do not entitle the plaintiffs to the relief
·demanded.    The demurrer being sustained, and the
plaintiffs electing to stand upon their petition and
amendment, judgment was entered against them, from
which they appeal.—*Affirmed.*

*Soper & Allen*, for appellants.

*T. W. Harrison*, for appellees.

·GIVEN, J.—1. The ground of demurrer to the peti-
tion being "that the facts stated therein do not entitle
the plaintiffs to the relief demanded," we must look to
the petition alone for the facts upon which to deter-
mine the questions presented.    The first contention is
whether the petition shows that the defendant T. W.
Harrison was incapable of acquiring title to the lands,
·or any of them, under the sales set out, for delinquent
taxes.    The allegations relating to this question may
be stated as follows:    Henry E. Seymour, deceased,
·of whom the plaintiffs Julius H. Seymour, Edmund
Seymour, and William W. Seymour are sole heirs, was
the owner of the patent title to the east half of the
northeast quarter of section 17, township 95, range 31,
Palo Alto county.    In 1878 he executed a quitclaim

deed therefor to John C. Bennett for the benefit of one
Shea. Bennett immediately quitclaimed to Shea &
Brown, and Brown and wife afterwards quitclaimed to
Shea. On February 3, 1881, Mr. Seymour commenced
his action to set aside said conveyances on the ground
of fraud on the part of Shea in obtaining the deed
from him. Pending the action, Shea quitclaimed to one
Gregg, and on December 21, 1881, Gregg quitclaimed
to the defendant Harrison, who was substituted as
defendant in the pending action to set aside the con-
veyances. June 26, 1882, a decree was entered against
Harrison, and in favor of the plaintiff Seymour, that
Harrison held the title in trust for Seymour, and can-
celling these several conveyances, and decreeing that
Harrison convey to Seymour. The case was retried on
Harrison's appeal, in this court, and affirmed July 14,
1883. See *Seymour v. Shea*, 62 Iowa, 708. At the
April term, 1884, Harrison's petition for a rehearing
was overruled; and on the twenty-eighth day of April,
1884, Harrison executed a quitclaim deed to Seymour, as
required by the decree. The petition shows that on
December 5, 1881, the undivided one-fortieth of the
north half of the land in question was sold to J. R.
Hughes for the taxes of 1880; that Hughes assigned
the certificates to the defendant Harrison, January 4,
1884, and that a treasurer's deed was executed to him
thereon October 1, 1889; that on December 4, 1882,
the remaining parts of said land were sold to John
Jenswold, Jr., for the taxes of 1881; that Jenswold
assigned the certificates to the defendant Harrison,
September 1, 1885, and that a treasurer's deed was
executed to him thereon December 14, 1885; that on
December 1, 1884, the parts of said land last sold were
again sold to Jenswold for the taxes of 1883; that
Jenswold assigned these certificates to the defendant
Harrison, January 7, 1885; and that a treasurer's deed
was executed to him thereon February 11, 1889. In

June, 1889,. Harrison conveyed part of the land to the defendant Drennan, but, as his title must stand or fall with that of Harrison, it need not be further. noticed.

The appellants' first contention is that Harrison was incapable of acquiring title to these lands under said tax sales, for the reason that he had

**1. TAX TITLES: right to purchase: holder of naked legal title.**

such an interest in and claim to the lands as entitled and required him to pay the the taxes; that he was, as to the plaintiffs' ancestors, a trustee *ex maleficio* of the lands, and could not acquire an adverse interest in the subject of the trust; and that to permit him, while making claim to the land, and while holding the legal title and defending both in the courts, to neglect to pay the taxes, and take title under the sales, would be to sanction a legal fraud, and permit him to do indirectly that which he and his grantors were denied the right to do directly. It is contended in argument that the deed from Seymour to Bennett, and the subsequent conveyances thereunder, vested in Harrison the legal title, valid as against all persons except Seymour; that with the legal title Harrison had possession and having such title and. posession, and having asserted unqualified ownership, and having taken title subject to tax liens, he thereby undertook himself to pay the taxes; that, it being his duty to pay the taxes, he could acquire no right or title to the land .by neglect of such duty which would defeat the plaintiffs.

It is a familiar rule that the owner of land, or one under obligation to pay taxes thereon, cannot acquire a tax title so as to defeat incumbrancers or others setting up a claim or title adverse to him. We have seen that by the decree it was adjudged that Harrison never had any ownership or interest in the land under the quitclaim deed to him. If nothing more appeared, it would be very clear that no obligation rested upon him to pay taxes, but he was adjudged to hold the title to the

land in trust for Seymour. This trust conferred no
right or interest in the land upon Harrison. It was
held to exist that the chain of legal title might not be
suspended or broken, but remain connected and con-
tinuous. The trust was as to the naked legal title,
which conferred no rights and created no obligation
upon Harrison with respect to the land, except that he
extended the chain of legal title to the real owner by
executing to him a quit-claim deed. It is not alleged
that Harrison was in possession, but it is argued
that possession will be presumed from his holding the
legal title. *Curtis v. Smith*, 42 Iowa 665, seems to us
to quite fully answer some of these contentions of the
appellant. In that case Brock, the owner, having con-
veyed the lands in question, thereafter executed a quit-
claim deed for the same lands to the defendant Smith,
who received the deed with full knowledge of the prior
conveyance. Thereafter Smith laid out part of the
land in town lots, and took an assignment of a tax sale
certificate from one Bergen. It was contended that
Smith had no right to a deed under the certificate
because of the quit-claim deed to him, and the fact that
he was in possession of the land. It was held that the
quit-claim to Smith gave him no right; that it was as
nothing, conveying no title to him, and imposing
no obligation upon him to pay taxes; that, if in pos-
session, he was a mere trespasser, and was not forbid-
den by the law to acquire a tax title on the land. The
court says: "But we know of no case where it is held
that one who has no interest in lands, is under no obli-
gation to pay the taxes, and sustains the relation to the
owner of a stranger, cannot acquire a tax title thereon;
and where possession is held neither as tenant, trus-
tee, nor agent of the land owner, it can be no impedi-
ment to the acquisition of a tax title upon the land."
If Harrison was in possession, it was not as trustee of
the land, but as a trespasser. It will be observed that

Harrison did not acquire the certificates of the tax sales made in 1882 and 1884, nor any of the tax deeds, until after the decree was affirmed, and he had quit-claimed the land to Seymour. By the decree and this quit-claim it is not only made to appear that he had no interest in the land thereafter, but that he had no interest in it theretofore by virtue of the quit-claim deed. It was made to appear, not only that no obligation rested upon him at the time he acquired these certificates to redeem therefrom, but that he was under no obligation to pay the taxes for which the sales were made. It follows, therefore, that under these certificates he had a right to acquire a tax title to the land covered by them.

The certificates of the sales of 1881 covered but a small fraction of the land, one being for one fortieth of the north forty acres and the other for one eighth of the south forty acres. Authorities are cited by the appellants emphasizing the obligation of him whose duty it is to list lands for taxation and to pay the taxes thereon. These authorities apply with full force to the appellants. During all the time from February 3, 1881, to the time the appellee received his tax deeds, the duty rested upon the appellants, or their ancestor, to pay those delinquent taxes, or to redeem from the sales made therefor, yet they never offered to do either until the bringing of this suit. We are of the opinion that the petition fails to show that Harrison had such an interest in the land as required him to pay the taxes for which it was sold, or that he held the legal title under such circumstances as would prevent him from acquiring a tax title under either or all of the certificates.

II. The petition shows that the land in question was taxed in the name of Frank B. Gregg, for the years 2. ——: notice to 1881 to 1885, inclusive, and thereafter in redeem: service. the name of appellee T. W. Harrison.

Notices of the expiration of the time to redeem from the tax sales made in 1881 and 1882 were served upon Gregg in Kansas City, Mo. It is not shown that notice was served upon any person to redeem from the sale made in 1884, nor is it alleged that no such notice was served. The inference is that none was served, inasmuch as the lands were taxed in the name of Harrison at the time for the service of such notice. That being the case, it was not required that Harrison should serve notice upon himself. It has been held that in such case no notice is required. *Knight v. Campbell*, 76 Iowa, 730; *Brown v. Pool*, 81 Iowa, 455.

The appellants' contention is that notice to the person in whose name the land is taxed can only be served personally when that person resides in the county; that, if he does not reside, then it must be by publication. It has been repeatedly held that, though the land is taxed by mistake in a wrong name, the notice must be given to the person in whose name it is taxed. *Hillyer v. Farneman*, 65 Iowa, 227; *Bradley v. Brown*, 75 Iowa, 180. These notices were properly served upon Gregg as the lands were taxed in his name at the time of the service thereof. Service upon Mr. Seymour or any other person would not have been sufficient. The evident purpose of the notice is to inform the person served of the matters required to be contained in the notice, and this is more certainly accomplished by personal service, though made without the county, than by publication. The provision for serving such notice by publication is permissive, and it cannot be said that the purpose of the statute is not fully accomplished when the service is personal. There is nothing in the statute requiring the service of notice upon the owner of the land, unless it is taxed in his name. The appellants and their ancestor might readily have put themselves in the way to be entitled to such notice. In *Rowland v. Brown*, 75 Iowa, 679, it is

held that "the place of service is not material where there is actual service, and the return need show only the service and the particular mode thereof." In *Baker v. Crabb*, 73 Iowa, 416, it is said: "Such notice need not be by publication exclusively, but may be served personally." The service is to be in the manner provided for serving original notices. Actual personal service of an original notice, either within or without the state, supersedes the necessity of publication. Code, section 2621.

Our conclusion is that the petition as amended fails to show facts entitling the plaintiff to the relief demanded, and that the demurrer was therefore properly sustained. AFFIRMED.